UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS PHARMACY, INC., Plaintiff, | : | |
| v. | : | C.A. No. 06-________ |
| SCOTT JONES, Defendant. | : | CA 06 348 ML |

**COMPLAINT**

As a complaint against Scott Jones, CVS Pharmacy, Inc., states as follows:

Nature of Action

1. This is an action for breach of contract and other equitable remedies under the common law of Rhode Island, and for attorney's fees and costs pursuant to R.I. Gen. Laws § 9-1-45.

Parties

2. Plaintiff CVS Pharmacy, Inc., ("CVS") is a Rhode Island corporation with a principal place of business in Woonsocket, Rhode Island.

3. Defendant Scott Jones ("Jones") is a former employee of CVS and a citizen of the state of Washington.

Jurisdiction

4. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332, on the grounds that the parties are of diverse citizenship and that the amount in controversy exceeds the statutory prerequisite.

Statement of Facts

5. On or about May 15, 2001, CVS and Cendant Mobility Services Corporation ("Cendant"), a Delaware Corporation, entered into a contract by which Cendant agreed to

arrange, facilitate, and front costs for the relocation of certain CVS employees in exchange for payment from CVS according to the terms of the contract. This contract is attached as Exhibit A.

6. On or about June 30, 2005, Jones accepted CVS's offer of employment for the position of Vice President of Service Delivery.

7. On or about June 30, 2005, Jones entered into a Repayment/Termination Agreement ("Agreement") with CVS, with respect to Jones' relocation expenses. The Agreement is attached as Exhibit B.

8. Per the Agreement, CVS agreed to spend a sum of money for the purpose of relocating Jones from Pennsylvania to Rhode Island.

9. In consideration for CVS's expenditure of money in connection with Jones' relocation, Jones agreed that should he "terminate employment or be terminated for cause within 12 months of relocation," he would repay to CVS all such relocation expenses.

10. Pursuant to its agreement with CVS, Cendant facilitated Jones' relocation to a new home in Rhode Island.

11. Pursuant to its contract with Cendant, CVS paid Cendant approximately one hundred sixty thousand dollars ($160,000.00) for the relocation services.

12. Jones began his employment with CVS on or about July 12, 2005.

13. Jones' employment with CVS was and remained for all relevant times at-will, and Jones' salary was approximately two hundred fifteen thousand dollars ($215,000.00) per year.

14. In or about January 2006, Senior Vice President and **Chief Information Officer** Jon Roberts ("Roberts") became Jones' immediate supervisor.

15. Roberts embarked upon a reorganization of CVS's information services department, to which Jones' continued employment as Vice President of Service Delivery was integral.

16. Roberts engaged in several discussions with Jones regarding the reorganization of the information services department.

17. During one or more of these discussions, Roberts informed Jones that the reorganization was to be implemented over a period of several months, and would likely be finished in early August, 2006.

18. Subsequently, on or about Friday, April 21, 2006, Jones entered Roberts' office, stated that he had been offered a "dream job" with Expedia in Seattle, and gave Roberts two (2) weeks notice of resignation.

19. Roberts asked Jones if Jones would be willing to remain in CVS's employ for a few more months, i.e., through early August 2006, until the reorganization had been implemented.

20. Roberts suggested to Jones that Jones use the weekend to think about whether he could remain at CVS until the end of the reorganization, and Roberts asked Jones to revisit the topic with Roberts again the following week.

21. On or about April 25 or 26, 2006, Jones spoke to Roberts. Jones stated that he could not give Roberts more time, and reiterated that he would resign effective May 5, 2006.

22. On or about May 2, 2006, Jones received a letter from CVS Human Resources Director K.J. Payette, stating that she had been informed of his resignation and requesting

that he reimburse CVS for relocation expenses totaling approximately one hundred sixty thousand dollars ($160,000.00)("the relocation amount") .

23. The relocation amount includes, among other things, the expenses related to the sale of Jones' home, a large loss on the sale of that home, the brokers' commissions incurred with respect to the sale of the home, Jones' expenses related to the search for a new home in Rhode Island, Jones' costs for temporary lodging in Rhode Island after he commenced employment at CVS and prior to moving into his new home, the expenses for moving Jones' household goods, and closing costs for his new home.

24. On or about May 2, 2006, Jones informed Roberts that he had changed his mind with respect to his resignation, and that he was now willing to stay in CVS's employ through July 2006.

25. Roberts told Jones that he had already accepted Jones' resignation and that he considered the resignation, which Jones had reaffirmed just days earlier, final.

26. On or about May 3 or 4, 2006, Jones met with Human Resources employee Lisa Bisaccia. When they discussed the topic of Jones' repayment of relocation expenses, Jones stated that he would get in touch with CVS and work it out.

27. At no times did Jones contest that he was responsible for the repayment of relocation expenses under the Agreement.

28. Since his resignation, Jones has not made repayment to CVS pursuant to the Agreement, despite repeated requests by CVS and counsel that he do so.

<u>Count I – Breach of Contract</u>

29. CVS realleges and incorporates the allegations in paragraphs 1 through 28 of this Complaint as if set forth herein.

30. Jones' failure to repay CVS for relocation expenses pursuant to the Agreement constitutes a knowing and willful breach of a valid and binding contract.

31. As a proximate and direct cause of Jones' breach, CVS has suffered pecuniary damages.

<u>Count II – Unjust Enrichment/Restitution</u>

32. CVS realleges and incorporates the allegations in paragraphs 1 through 31 of this Complaint as if set forth herein.

33. CVS conferred the benefit of paying for relocation expenses upon Jones.

34. Jones appreciated such benefit, in that he did not have to pay for his relocation.

35. Jones' retention of the benefit would be inequitable without the payment of compensation to CVS for the value of the benefit received.

36. CVS is therefore entitled to equitable restitution of the moneys spent for the benefit of Jones.

<u>Count III – Promissory Estoppel</u>

37. CVS realleges and incorporates the allegations in paragraphs 1 through 36 of this Complaint as if set forth herein.

38. Jones made an unequivocal promise, in writing, to repay CVS for relocation expenses should his employment be terminated within twelve (12) months.

39. Jones should have reasonably expected that such promise would induce CVS to pay for Jones' relocation expenses.

40. Jones promise to repay CVS if employment terminated within twelve (12) months did, in fact, induce CVS to pay for Jones' relocation expenses.

41. Because injustice can only be avoided by enforcing Jones' promise to repay CVS, CVS is equitably entitled to repayment for the moneys spent on Jones' relocation.

Count IV – Attorney's Fees and Costs

42. CVS realleges and incorporates the allegations in paragraphs 1 through 31 of this Complaint as if set forth herein.

43. Jones' undisputed failure to repay CVS for relocation expenses according to the clear terms of the Agreement presents "no justiciable issue of either law or fact."

44. Therefore, pursuant to R.I. Gen. Laws § 9-1-45, CVS is entitled to attorney's fees and costs.

WHEREFORE, Plaintiff CVS Pharmacy, Inc. hereby demands judgment against Defendant Scott Jones for compensatory damages and/or restitution, costs and fees, along with what further and other relief this Court deems proper.

Respectfully submitted,
CVS PHARMACY, INC.

By its attorneys,

NIXON PEABODY LLP

Neal J. McNamara (#4249)
Matthew J. Frankel (#7293)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
mfrankel@nixonpeabody.com

Dated: July 28, 2006