# RELOCATION MANAGEMENT AGREEMENT

This Agreement is entered into as of the 15th day of May, 2001, between CENDANT MOBILITY SERVICES CORPORATION, a Delaware corporation, ("Cendant Mobility"), and CVS PHARMACY, INC, a Rhode Island corporation (the "Client").

1. **Terms and Conditions.** This Agreement shall not be effective unless fully executed prior to May 30, 2001. This Agreement sets forth the terms and conditions pursuant to which Cendant Mobility shall provide the services described in the Exhibits attached hereto and made a part hereof.

2. **Assignment and Succession.** This Agreement shall inure to the benefit of and be binding upon the successors and permitted assigns of the parties hereto. Neither party may assign its rights hereunder without the written permission of the other party, and any other attempted assignment thereof shall be void and of no effect. Notwithstanding the foregoing, Cendant Mobility may assign its rights to receive payments hereunder for purposes of financing which will not affect its obligation to observe and perform all of the conditions and covenants to be performed by it under this Agreement.

3. **Subsidiaries and Affiliates.** If the Client directs Cendant Mobility to provide its services hereunder to any subsidiary, affiliate or other entity, Cendant Mobility is hereby authorized to provide such services. The Client shall be liable for all services provided to such subsidiary, affiliate and other entity provided under this Agreement. The Client acknowledges and agrees that Cendant Mobility may provide services hereunder through its subsidiaries and affiliates, and through independent contractors, whenever and wherever it becomes necessary or appropriate to do so, provided that Cendant Mobility shall be responsible for all services performed by subsidiaries, affiliates and independent contractors.

4. **Audit of Records.** Cendant Mobility shall maintain complete records of all transactions under this Agreement for a period of 2 years from the date on which the service is rendered. Such records shall be available for audit by the Client at the offices of Cendant Mobility during regular business hours upon reasonable written notice. Any such examination or audit shall be at the Client's sole expense and shall include the reasonable expenses incurred by Cendant Mobility in connection with such examination or audit.

5. **Responsibilities of the Parties.** (a) Cendant Mobility shall be responsible for providing its services under this Agreement in a commercially reasonable manner and in accordance with all applicable federal, state, and local laws. Except to the proportionate extent of any negligence on the part of the Client, its Employees or its agents, Cendant Mobility agrees to indemnify and hold the Client and its Employees harmless from all claims, liability, losses, damages, expenses and lawsuits (including reasonable attorney's fees) that may arise out of the fraud, deceit or misrepresentation, or any negligent act of Cendant Mobility or its employees in the performance of its obligations hereunder, irrespective of when such claims, demands or lawsuits arise. Such right to indemnification shall survive the termination of this Agreement. Upon performance of its obligations to reimburse the Client, Cendant Mobility shall be subrogated to the Client's rights.

(b) Except to the proportionate extent of Cendant Mobility's responsibility described in (a) above, the Client agrees to indemnify, reimburse and hold Cendant Mobility harmless from all claims, liability, losses, damages, expenses, lawsuits and costs of collection (including reasonable attorney's fees) that may arise out of any transaction or service performed under this Agreement, and any Exhibit, including without limitation those arising from (i) encumbrances upon title of a Home, (ii) defects in the physical or structural condition of any Home (including but not limited to hazardous or toxic materials and gases), (iii) fraud, deceit, failure to disclose, or misrepresentation by client or employees, or (iv) failure or inability of client or employees to make a payment, adjustment or repayment, to make a total refund under the appropriate circumstances, or to fulfill any other obligation to Cendant Mobility irrespective of when such claims, demands or lawsuits arise. The rights and responsibilities under this section shall survive the termination of this Agreement. Upon performance of its obligations to reimburse Cendant Mobility, the Client shall be subrogated to Cendant Mobility's rights.

(c) In performing its services hereunder, Cendant Mobility is relying on the timely and accurate provision of data from the Client, its Employees, and its vendors. Cendant Mobility shall exert its best efforts to support the Client in meeting all reporting requirements imposed on the Client by governing authorities. Cendant Mobility assumes no responsibility for penalties or consequential, indirect, or incidental damages (including lost profits) arising out of its performance of relocation accounting functions on behalf of the Client or for any loss, cost or expense arising out of information provided by or through the Client in an inaccurate or untimely manner.

6. **Independent Contractor.** (a) Cendant Mobility is an independent contractor and not a partner, employee, agent or franchisee of the Client. The Client recognizes that Cendant Mobility retains all the rights and privileges of an employer, including but not limited to the right to hire, direct, discipline, compensate, and terminate its employees assigned to the Client's business. Cendant Mobility will pay all salaries, payroll and other taxes, fees, workers compensation insurance and other charges or insurance levied or required by any federal, state, or local statutes, relating to the employment of its employees. Client shall not be regarded as a party to any collective bargaining agreement or agreements which are now in effect or which may hereafter be entered into by Cendant Mobility. Cendant Mobility represents that it is in compliance with all federal, state and local equal employment opportunity statutes and regulations.

(b) Cendant Mobility and the Client agree that, during the term of this Agreement, and for a period of one year after the termination of the Agreement, neither party shall hire, employ or negotiate the employment of employees of the other party without the written consent of the said other party.

7. **Notice.** All notices under this Agreement shall be in writing and shall be deemed to have been duly submitted when received by the respective party at the address set forth below, or such other address as that party may specify to the other by notice as provided herein:

Cendant Mobility Services Corporation
83 Wooster Heights Road
Danbury, CT 06810-5100
Attention: Contract Administration

CVS Pharmacy, Inc.
One CVS Drive
Woonsocket, RI 02895

8. **Payment.** Cendant Mobility's fees, reasonable costs, and expenses as set forth in any Exhibit, shall be paid within 30 days of the date of the invoice. The Client agrees to pay a finance charge of 1.5% per month or fraction thereof (or the highest rate allowed by law, whichever is lower) on any unpaid amount unless the unpaid amount is subject to a good faith dispute. Cendant Mobility's failure to send an invoice shall not relieve the Client from any of its obligations once the Client actually receives an invoice. Payment of those portions of invoices not subject to disputes shall not be withheld pending resolution of disputes as to other portions. The Client hereby authorizes Cendant Mobility to apply the proceeds of the sale of Homes against its fees and Direct Expenses. All monetary values herein are expressed in US Dollars.

9. **Entire Agreement.** This Agreement, together with any Exhibits, constitutes the entire agreement between the parties hereto and supersedes all prior understandings and agreements, written or oral, with respect to the services contemplated hereunder. This Agreement may be amended or modified, and additional Exhibits may be added, only by an instrument signed by the parties hereto. Cendant Mobility shall provide such other services outside of the scope and intent of this Agreement and the attached Exhibit as Cendant Mobility and the Client shall mutually agree upon in writing and for which Cendant Mobility shall receive an agreed upon fee. A waiver of any provision of this Agreement must be signed by the party against whom enforcement of that waiver is sought in each case. In the event that any provision of this Agreement or any Exhibit shall be held invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provision(s) hereof and the affected provision shall be curtailed and limited only to the extent necessary to bring such provision within the legal requirements, and this Agreement, as so modified, shall continue in full force and effect. Except as otherwise noted, any defined term which appears in the any portion of the Agreement shall have the same meaning throughout the Agreement.

10. **Governing Law.** This Agreement shall be governed by the laws of the State of Connecticut.

11. **Tax Advice.** The Client acknowledges that Cendant Mobility is not retained to and is not providing tax advice to the Client but is being retained to administer a relocation program in accordance with the Client's relocation policy. Cendant Mobility makes no representations concerning the tax consequences of any transaction under this Agreement.

12. **Exclusivity.** Cendant Mobility shall have the exclusive right, except for any program of relocation assistance administered solely by the Client, to offer to the Client's Employees the services provided for hereunder during the term of this Agreement. Further, the Client agrees that any change in the Client's relocation program, policy or practices having the potential to adversely affect the work performed by Cendant Mobility or to materially alter the assumptions utilized to determine pricing hereunder shall be communicated promptly to Cendant Mobility and may be cause for a renegotiation of service fees and other provisions hereunder.

13. **Confidentiality.** The Client and Cendant Mobility acknowledge and agree that each will deliver to the other confidential and proprietary information in performing under this Agreement, and each agrees to keep confidential all information received by it hereunder, and treat it as it would treat its own confidential and proprietary information. The Client agrees that it will not show, nor permit to be shown, any copies of or terms and conditions of this Agreement or any subsequent agreements between the parties to any competitor of Cendant Mobility.

14. **Acceptance.** Acceptance of this Agreement is subject to satisfaction of Cendant Mobility's client credit and other requirements. Cendant Mobility furthermore reserves the right to suspend the provision of or the execution of contracts of purchase or sale pending an evaluation of the Client's financial condition reasonably undertaken by Cendant Mobility to protect its interests and receipt of satisfactory evidence to Cendant Mobility that the Client's financial condition has not and will not deteriorate such that its ability to pay sums due or to become due to Cendant Mobility hereunder may be delayed or nonexistent.

Optional

15. **Service Fee Adjustments.** To compensate for changes in the purchasing power of the dollar (inflation/deflation), service fees shall be adjusted annually. This adjustment shall be calculated each January 1 and shall apply to billings rendered in the ensuing calendar year. The amount of the adjustment will be calculated by determining the ratio of (a) the most recent November 30 Consumer Price Index, US average for all Urban Consumers as determined by the Bureau of Labor Statistics ("CPI-U") to (b) the CPI-U as of this contract date, and then by multiplying such ratio by the respective service fees stated herein and rounding the result to the nearest ten dollars.

16. **Exhibits.** The Services and Procedures as described in the attached Exhibit A and the Cost Savings Targets and Standards of Performance as described in the attached Exhibit B, are hereby incorporated herein by reference.

17.**Termination.** (a) Either party may terminate this Agreement by written notice to the other party; provided, however, that the Client shall continue to make all undisputed payments required as set forth in this Agreement. The effective date of termination shall be: (i) sixty (60) days after the date on which notice of termination is mailed, (ii) on any later date stated in the notice, (iii) at Client's option immediately upon its reasonable determination that Cendant Mobility's financial condition has deteriorated such that its ability to perform its duties and obligations under this Agreement have been materially affected, or (iv) at Cendant Mobility's option immediately either (a) upon Cendant Mobility's reasonable determination that the Client's financial condition has deteriorated such that its ability to pay the sums due to Cendant Mobility has been materially delayed or nonexistent, or (b) upon the Client's failure to pay any and all undisputed invoices which remain in arrears at least ten (10) business days after written request for payment and notice of intent to terminate for nonpayment.

(b) At the effective termination date, Cendant Mobility shall not be obligated to: make any Offers to the Client's Employees, purchase any Homes of Employees for which Cendant Mobility has made an Offer and Acceptance has not occurred or perform any other services contemplated under this Agreement.

(c) After notice is given by either party and prior to the effective termination date, one of the following options shall be mutually agreed upon by Cendant Mobility and the Client. In the event Cendant Mobility and the Client can not agree, option (2) shall apply:

(1) The Client shall purchase all Inventory Homes, and Cendant Mobility shall be paid any equity payments and equity loans in addition to its Direct Expenses incurred in addition to the fee for Appraised Value Sales in Exhibit A for each Home; or

(2) Cendant Mobility shall continue to market all Inventory Homes to third-party purchasers and shall be entitled to all Direct Expenses and the fee stated under Appraised Value Sale in Exhibit A for each such Home.

(d) All obligations of one party to the other existing at the time of termination shall survive the termination of this Agreement, including but not limited to the provisions of section 5 of this Agreement and any obligations of Client to pay Cendant Mobility.

19. **Service Guarantee.** Cendant Mobility shall refund the service fee (but not Direct Expenses) on any individual Outsourced Services Authorization if the Client, in good faith, determines that Cendant Mobility's performance was unsatisfactory.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first set forth above.

| | |
|---|---|
| CENDANT MOBILITY SERVICES CORPORATION | CVS PHARMACY, INC. |
| By: [signature] | By: [signature] |
| Name: John E. Borger | Name: Ellen R. Sheil |
| Title: Senior Vice President | Title: Staffing Director |
| Its Authorized Signatory | Its Authorized Signatory |

SFS 3/14/01 D. Keating
U:\mydocuments\contract\CVS\con3142001

CVS LE... [stamp/initials]

**EXHIBIT A**
**SERVICES AND PROCEDURES**

## I. Definitions

"Acceptance" shall mean submission by the Employee of a written acceptance of Cendant Mobility's Offer to purchase the Employee's Home, together with all documents (properly completed, signed and notarized) required by Cendant Mobility, within sixty (60) days of Cendant Mobility's Offer. The Offer will be binding on Cendant Mobility only when all other required information and documents are received by Cendant Mobility (or its representative, as appropriate) and approved by Cendant Mobility.

"Amended Value Sale" shall mean the sale of a Home by an Employee to Cendant Mobility at a price equal to a bona fide third-party offer that is (i) higher than the Appraised Value or (ii) acceptable to the Employee, and approved by Cendant Mobility (the "Amended Value").

"Appraised Value" shall mean the average of two independent appraisals from a list of appraisers provided by Cendant Mobility. If the two appraisals vary by more than five percent (5%) of the higher of the two appraisals then a third independent appraisal shall be ordered and the Appraised Value shall be computed by averaging the two closest appraisals. If the three appraisals are equidistant from each other, the Appraised Value shall be computed by averaging all three appraisals.

"Appraised Value Sale" shall mean the sale of a Home by the Employee to Cendant Mobility at a price equal to the Home's Appraised Value.

"Assigned Sale" shall mean assignment by the Employee to Cendant Mobility of an executed third party contract for the sale of the Employee's Home.

"Authorization" shall mean the Client's direction in writing or electronically that an Employee is eligible to receive services under this Agreement.

"Cancellation" shall mean the withdrawal by the Client of a bona fide Authorization.

"Direct Expenses" shall mean reasonable and documented costs which are attributable to the provision of service to an Employee, including, but not limited to, appraisals, broker's market analyses ("BMA") and inspections, brokerage commissions, title and title search fees, transfer taxes, mortgage payoff, mortgage interest (or interest on the mortgage payoff at the mortgage interest rate), insurance premiums, property taxes, overnight delivery charges, postage, wire transfer fees, cost of interest at the Prime Rate as quoted by the Wall Street Journal in New York (compounded monthly) on all payments and expenses paid on behalf of the Client and the Employee, cost of improvements, cost of removal and mitigation of hazardous materials or gases (such as asbestos, lead paint, radon gas, or urea formaldehyde insulation and replacement with suitable replacement materials), repair and maintenance costs, utilities, loss on resale, buyer incentive costs, real estate closing costs and all costs incurred by Cendant Mobility in handling and moving an Employee's goods, including but not limited to packing, transporting, storing, unpacking, and insurance whether charged by a carrier or otherwise. All expenses and/or credits which were not ascertained at the time of issuance of the closing billing shall be allocated equally to Homes for which closing billings are rendered during the succeeding billing period. Any net resale gains shall be a credit to the Client.

"Employee" shall mean any individual designated by the Client to receive services, or for Home Sale Services, also any other person to the extent that such person has an interest in the Home of the designated individual.

"Equity Payment" shall mean payment of the Employee's equity in the Home by Cendant Mobility.

"Home" shall mean improved real estate: (i) which is owned and used by an Employee as a principal year-round one or two family residence, including condominiums but excluding cooperative housing and mobile homes; (ii) which contains acreage within the norm and zoning limits for the locale or neighborhood; (iii) with respect to which insurance is available at standard rates for normal hazards of fire and extended coverage; (iv) with respect to which any leases can be terminated by Cendant Mobility with no more than sixty (60) days' notice to the tenant; (v) whose value, as determined hereunder, does not fall below Seventy-five Thousand Dollars ($75,000) or exceed Five Hundred Thousand Dollars ($500,000); (vi) which is not situated on or near and does not contain any hazardous or toxic materials or gases, including but not limited to asbestos, lead paint, or radon gas, in excess of governmental guidelines; (vii) in which the Employee has

marketable title; and (viii) which has all of the normal characteristics of a home, such as potable running water, sewage or septic systems, and electricity.

"Inventory Period" shall commence on the day that Cendant Mobility signs a contract of sale to purchase an Employee's Home and shall end on the day that Cendant Mobility closes the resale of such Home to a third-party purchaser. During the Inventory Period, a Home shall be an "Inventory Home." By the time the Inventory Period has reached twelve (12) months, Cendant Mobility shall have taken title to the Home.

"Offer" shall mean a written offer from Cendant Mobility to the Employee to purchase the Employee's Home.

"Special Home Transaction" shall mean improved real estate that (i) does not fit one or more of the characteristics set forth in the definition of "Home" above, (ii) is an Assigned Sale, or a Amended Value Sale that fails to close, or (iii) involves special considerations or requires material deviations from the procedures set forth in this Agreement, but which the Client requests Cendant Mobility to handle under special terms, conditions, and pricing as set forth herein or as otherwise agreed in writing by the Client and Cendant Mobility.

"Vacate Date" shall mean the date on which the Employee vacates the Home, which date shall be within sixty (60) days of Acceptance. Upon Acceptance the Employee shall notify Cendant Mobility in writing of the Vacate Date.

## II. Marketing Assistance Service

**A. Procedures.** Cendant Mobility shall assist the Employee in marketing the Home by providing counseling and direction on the Client's relocation policy and, with the advice of a local real estate broker/agent, on the listing price, sales strategies, corrective maintenance, etc., and in responding to any offers received in order to maximize the net price received by the Employee. Cendant Mobility shall provide marketing assistance services for a period of 60 days from the beginning of the provision of service.

**B. Sale of the Home by the Employee.** Nothing in this agreement is intended to be deemed as a guarantee by Cendant Mobility that the Employee will successfully sell the Home within a specific period of time at a particular price, it being expressly understood that Cendant Mobility's services are designed and intended to assist the Employee in complying with Client's relocation policy and, with the advice of a local real estate broker/agent, in developing and implementing an objective marketing strategy for selling the Home.

**C. Fees and Costs.** There shall be no fee for this service for those Employees authorized for Outsourced Services, however the Client shall pay all Direct Expenses incurred.

## III. Home Sale Service

**A. Procedures.** Cendant Mobility will support the marketing and sale of the Employee's Home in accordance with the following procedures:

(1) *Amended Value Sale.* If during the Acceptance period the Employee locates a buyer for the Home and has neither executed a binder, contract, or other agreement with that buyer nor accepted any payment in connection therewith, Cendant Mobility will purchase the Home from the Employee at the net price offered by the buyer and then sell the Home to the buyer at that same net price. Should the sale to the buyer fail to close, Cendant Mobility will take the Home into its inventory at the Amended Value purchase price, for which the Client agrees to pay the fee listed for a Special Home Transaction.

(2) *Assigned Sale.* If the Employee locates a buyer for the Home and, contrary to the procedures applying to the Amended Value Sale, has nevertheless executed a binder, contract, or other agreement with that buyer, or has accepted any payment in connection therewith, Cendant Mobility will accept an assignment from the Employee of the sale to the buyer and close the sale to the buyer. If the sale to the buyer falls through (before the expiration/removal of contingencies in the contract with the buyer). Cendant Mobility will buy the Home from the Employee and pay the Employee the Appraised Value for the Home, for which the Client agrees to pay the fee listed for a Special Home Transaction.

(3) *Appraised Value Sale.* If the Employee is unsuccessful in selling the Home, Cendant Mobility will purchase the Employee's Home at the Appraised Value and will use its best efforts to sell the Home at the most advantageous price and terms.

(4) *Equity Loan.* Cendant Mobility will process an Employee's equity loan in accordance with the Client's employee relocation policy. Cendant Mobility shall be repaid from the proceeds of sale of an Employee's Home. If there is no sale, or if there is a shortfall, the Employee shall immediately pay Cendant Mobility in accordance with the terms of the equity loan agreement.

**B. Service Fees and Billing.**

(1) *Service Fees.* The Client shall pay Cendant Mobility its Direct Expenses plus the following management fee for the services rendered hereunder:

| | |
|---|---|
| (a) Appraised Value Sales | No fee for Employees authorized for Outsourced Services |
| (b) Amended Value Sales and Assigned Sales | No fee for Employees authorized for Outsourced Services |
| (c) Special Home Transactions | No fee for Employees authorized for Outsourced Services but the Client shall pay an Inventory Fee of $650 for each month or part thereof that the Home is an Inventory Home, after 90 days. |
| (e) Equity Loans | $ 150 per Loan |

(2) *Billings.* Fees for all services shall be billable upon receipt of an Authorization for that service. Cendant Mobility will send invoices to the Client in the following amounts:

(a) *Advance Billing*: For Appraised Value Sales, Amended Value Sales, Assigned Sales and Homes which are Special Home Transactions, a billing equal to ten percent (10%) of the Appraised Value or sale price, if appropriate, of all Homes for which Cendant Mobility has issued an Offer, as an advance against Cendant Mobility's management fee and/or Direct Expenses. If the Client requests that Cendant Mobility pay an Employee an amount in excess of the Appraised Value, Amended Value or Assigned Sale price, the Client shall also advance to Cendant Mobility an amount equal to that excess.

(b) *Final Billing*: A billing on each Home closed, showing the appropriate fee due Cendant Mobility as stated above, all Direct Expenses (and Inventory Fees for Special Home Transactions only) with regard to that Home, and a reconciliation of advances paid by the Client with regard to that Home, resulting in a credit due the Client or a payment due Cendant Mobility.

(c) *Miscellaneous*: A billing for any other costs reasonably incurred by Cendant Mobility at the Client's request or subsequent to the final billing.

## IV. Broker Selection

Cendant Mobility will provide all Employees with basic direction regarding the Client's relocation policy and, as appropriate and with the advice of a local real estate broker/agent, the marketing and sale of a Home, the finding and purchasing of a new residence, and the selection of certain essential real estate providers. In particular, Cendant Mobility: (i) will provide each Employee with a referral to a real estate broker or brokers who agrees to provide services that are not generally available in the market place and (ii) will monitor the services provided by the selected broker(s). The Employee is not obligated to use any broker recommended by Cendant Mobility and can request that Cendant Mobility refer the Employee to any broker of the Employee's choice meeting Cendant Mobility's qualification criteria. Cendant Mobility may receive a referral fee from the broker(s) in connection with these services.

## V. Referral Recovery Fee

Cendant Mobility anticipates collecting a referral fee for each Employee who owns a home. As anticipated revenue, the referral fees collected by Cendant Mobility have been used as the basis for providing reduced pricing to the Client.

In the destination location, in each case where either (i) no referral is possible as there was no commission paid to a real estate broker or (ii) Cendant Mobility was not positioned to collect a referral fee due to actions or inactions of the Employee or Client, such as a Homeowner Employee who chooses to rent in the destination location rather than buy a new home, the Client agrees to pay Cendant Mobility a referral recovery fee of $1,200. Where Cendant Mobility does not collect a referral

fee due to the actions or inactions of Cendant Mobility, no such referral recovery fee shall be due. The Referral Recovery Fee shall not begin to apply until 120 days after the start of the contract.

## VI. Outsourced Services

A. **Policy Counseling.** Cendant Mobility will provide appropriate oral and written communication to Employees and their families regarding the Client's relocation policy, including applicable administrative procedures and assistance with the resolution of problems related to the relocation process. In connection therewith, Cendant Mobility will provide assistance and consultation to the Client in the review of policy exceptions and temporary living assistance.

B. **Relocation Accounting.**

(1) Cendant Mobility will track and/or pay agreed upon Client's relocation expenses, calculate tax assistance (gross up) and/or withholding taxes in accordance with Cendant Mobility's automated tax calculation capabilities, provide annual reporting on such expenses to the Employee and provide annual, quarterly or monthly reporting to the Client's payroll and accounting departments using Cendant Mobility's standard payroll and accounting report formats. Reporting in a customized format, at more frequent intervals or to multiple payroll locations may be provided upon request and at an additional fee. Supporting documentation (expense reports, supplier invoices) will be retained in Cendant Mobility's files and will be available for Client audit, pursuant to section titled "Audit of Records" of this Agreement.

(2) Cendant Mobility shall invoice the Client for disbursements of reimbursable employee expenses and other such payments made to or on behalf of the Employee pursuant to the Client's relocation policy, together with interest on such disbursements at the Prime Rate as quoted by the Wall Street Journal and compounded monthly. Further, upon request and payment of an additional fee, Cendant Mobility shall provide appropriate relocation accounting services for files in progress.

C. **Reporting.** Cendant Mobility may provide to the Client several monthly reports in Cendant Mobility's standard format. These reports include an initiation report listing all Employees authorized in the previous month, an inventory report providing detail on all inventory and Cendant Mobility's performance on each Home until sold and a program cost report which details information on all expenses related to each Employee's relocation. In addition, Cendant Mobility may provide its standard quantitative management reports quarterly or semiannually. These reports include a service evaluation report detailing the Employees service evaluation results for the previous reporting period, an activity summary which indicates the status of a group of Authorizations, a Home Sale cost summary which summarizes the costs associated with the completion of each Home Sale and a program cost summary which summarizes expenses for all services.

D. **Fees.** As compensation for performing Outsourcing Services, the Client agrees to pay, upon Authorization, Cendant Mobility a fee plus Direct Expenses as follows:

(1) Home Sale Homeowners — $ 1,000, plus Direct Expenses
(includes Home Sale Assistance, Outsourced Services, Temporary Living Assistance, Marketing Assistance, Destination Services, Moving Services, and Mortgage Assistance)

Cancellation Fee — $ 750, plus Direct Expenses

(2) Non – Home Sale Homeowners — $ 695, plus Direct Expenses
(includes Marketing Assistance, Outsourced Services, Temporary Living Assistance, Destination Services, Moving Services, and Mortgage Assistance)

Cancellation Fee — $ 500, plus Direct Expenses

(3) Renters — $ 775, plus Direct Expenses
(includes Outsourced Services, Temporary Living Assistance, Destination Services, Moving Services)

Cancellation Fee — $ 350, plus Direct Expenses

(4) New Hires — $ 195, plus Direct Expenses
(Includes Relocation Accounting forlump sum payments)

Cancellation — $ 100, plus Direct Expenses

## VII. Destination Services

A. **Home Finding.** Cendant Mobility shall assist the Employee in coordinating home finding efforts through qualified local real estate sources.

B. **Rental Assistance.** Cendant Mobility shall refer the Employee to a qualified local leasing source utilizing Cendant Mobility's network of rental locators, Cendant Mobility leasing agents, and network real estate brokers, (collectively "Providers"), depending on the location and availability of the Providers. The appropriate Provider shall tour with the Employee (and family) for one half day (three hours) or one full day (seven hours). This tour is to acquaint the Employee with specific points of interest and show available or representative rental properties to the Employee.

C. **Fees and Billings.** Cendant Mobility shall bill the Client for any Direct Expenses incurred, including but not limited to fees charged by local home finding, rental services, costs of tours or finder fees where appropriate. There shall be no fee for basic home finding services, but, after closing, Cendant Mobility may receive payment from the broker representing a share of the broker's commission. There shall be no additional fee for Rental Assistance for Renter Transferees, and Cendant Mobility may receive a referral fee from the Provider in connection with the Rental Assistance program. However the Referral Recovery Fee, as referenced in Section V above will apply when a Homeowner Employee chooses to rent in the destination area instead of buying a Home.

## VIII. Moving Services

A. **Procedures.** Cendant Mobility shall facilitate shipment of the Employee's household goods by: counseling the Employee on the procedures and benefits of the program; selecting a qualified carrier with which Cendant Mobility has a relationship; booking the move; coordinating the packing, loading, pickup, storage, and delivery, as appropriate, of the Employee's household goods; and assisting the Employee in filing and resolving any claims resulting from damage in transit. Upon completion of the move, Cendant Mobility shall manage the audit and authorize Client payment of the carrier's invoice. As a registered moving broker, Cendant Mobility may receive commissions in connection with the procuring of moving services.

B. **Insurance.** Cendant Mobility shall maintain as a Direct Expense insurance insuring the Employee against loss, damage, or injury to household goods, up to the value of the household goods declared by the Employee in excess of the liability insurance of the carrier. Such coverage may be subject to any policy exclusions. Other than maintaining the foregoing insurance, Cendant Mobility shall not be responsible for any loss or damage to any household goods or personal effects sustained during any portion of the Move.

C. **Fees and Billings.** The Client shall pay to Cendant Mobility its Direct Expenses plus the following fees, as applicable, for the services rendered hereunder:

(1) For each Move completed within the continental United States (excluding Hawaii): No fee for those Employees authorized for Outsourced Services, New Hires are not eligible for the service.

(2) *Permanent Storage.* For each Move completed from permanent storage to any point: $100

## IX. Mortgage Services

When the Client determines that an Employee is eligible for mortgage assistance, Cendant Mobility will utilize the services of an affiliated company, Cendant Mortgage Corporation ("Cendant Mortgage"), to provide Employees of the Client with mortgage assistance services as follows:

A. **Authorization.** Upon Authorization to Cendant Mortgage (with a copy to Cendant Mobility), Cendant Mortgage shall offer mortgage assistance to the eligible Employee.

B. **Approval.** Upon completion of its review of the Employee's mortgage application and other documentation, Cendant Mortgage shall make a determination whether a mortgage loan should be made to the Employee (and any co-borrower); if the loan is granted, the loan amount, duration, interest rate and other terms and conditions governing such loan shall be communicated to the Employee. Final approval of the mortgage loan shall be at the sole discretion of Cendant Mortgage in compliance with its mortgage loan policies.

**C. Mortgage Loan Closing.** If the Employee (and any co-borrower) has successfully fulfilled all of the obligations with respect to the mortgage loan application and commitment procedure, Cendant Mortgage shall arrange for the closing of the loan. The Employee (and any co-borrower) shall execute all instruments, including but not limited to the mortgage instrument, mortgage or promissory note, or similar documents, and shall pay any fees and closing costs required by Cendant Mortgage.

**D. Direct Bill.** If the Client has elected to participate in Cendant Mortgage's Direct Bill program, then at time of closing Cendant Mortgage shall pay on behalf of the Employee all reimbursable closing costs described in the Client's current benefit policy, which shall be supplied to Cendant Mortgage. This arrangement will be administered by Cendant Mortgage only if the Employee obtains a mortgage through Cendant Mortgage.