**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **CVS PHARMACY, INC.** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **C.A. No. 06-348 ML** |
| **v.** | : | |
| | : | |
| **SCOTT JONES** | : | |
| | : | |
| **Defendant** | : | |

**PRETRIAL MEMORANDUM**

Pursuant to the Order of this Court, Defendant respectfully submits his Pretrial Memorandum.

## I. FACTS EXPECTED TO BE PRESENTED BY PARTIES AT TRIAL

Plaintiff CVS, Inc. (hereinafter "CVS") filed a two (2) count Complaint with this Court based upon diversity of the parties (Defendant Jones now resides in Seattle, Washington) alleging common law breach of contract and entitlement to attorneys' fees pursuant to R.I.G.L. § 9-1-45. Defendant Scott Jones (hereinafter "Jones") filed a Counterclaim alleging the same causes of action against CVS. The Complaint and Counterclaim both center around an agreement regarding payment by CVS of relocation costs for Jones. CVS alleges that on or about June 30, 2005, Jones agreed to enter into employment with CVS. As part of the employment agreement, CVS agreed to pay expenses incurred by Jones to move himself and his family from Pennsylvania to Rhode Island. CVS alleges that the employment agreement further provided that if Jones terminated his employment or was terminated for cause within twelve (12) months, Jones would repay CVS for the relocation expenses. CVS alleges that Jones began his employment on or about July 12, 2005, and voluntarily resigned his employment on or about May 2, 2006, subjecting him

to a contractual obligation to repay relocation costs in the amount of approximately $160,000.00.

As outlined in his Answer and Counterclaim, Jones's view of the events surrounding his employment and termination radically differ from that of CVS. Jones acknowledges that he entered into an agreement with CVS regarding relocation costs. However, Jones stands adamant that he did not either voluntarily resign his employment and was not terminated for cause. Jones contends that CVS unilaterally terminated his employment after he indicated to his immediate superior (Jon Roberts) interest in another offer of employment he had received and the possibility of a renegotiation his relocation costs should he decide to accept the proposal. Jones and CVS personnel have all testified in depositions that Jones was abruptly asked to leave his employment on May 2, 2006, without Jones having any prior knowledge that May 2, 2006 would be his last day of employment with CVS. CVS personnel testified at deposition that they knew the meeting was going to be held for the purpose of ending Jones' employment with CVS.

CVS contends that Jones had already tendered a two week notice of resignation to Jon Roberts, which would have made May 5, 2006 Jones' last day of work, and that forcing Jones to leave his employment earlier does not change the fact that Jones ultimately resigned and stands subject to repayment of relocation costs. CVS has no formal documentation of Jones' resignation despite the fact that Jones was a Vice President with the company. The only evidence that CVS has that Jones resigned is testimony from Jon Roberts, which Jones strongly refutes. Jones' version of events is bolstered by conflicting testimony from CVS personnel and by Jones' communications with William Holtz, Jones' immediate supervisor in his subsequent employment with Expedia, Inc.

In addition, the calculation of Jones' relocation costs is questionable. CVS personnel have denied any involvement in the calculation of Jones' relocation costs, and their breach of contract claim relies upon a document that was countersigned by an outside relocation company after Jones supposedly resigned his employment with CVS. The questionable execution of the document calls into question whether or not the contract for repayment of Jones' relocation costs is binding upon Jones at all. Further, the calculation of Jones' relocation costs includes an amount of approximately $100,000.00 as a loss on the resale of Jones' Pennsylvania residence. However, Jones formally sold the home to a relocation company working with CVS. In formally selling the home to the relocation company, Jones signed away all future rights and liabilities concerning the real estate. CVS is now attempting to collect on a loss resulting from the sale of the real estate when Jones had no control over any decisions made regarding the ultimate sale of his former residence, such as marketing strategies and whether or not to accept or reject any offers. The documents produced by CVS seem to indicate that the home was sold with very little effort made to avoid a loss. Instead, the documents indicate that the home was sold as quickly as possible for the first available offer, with little or no attempt to negotiate a higher price.

## II PROPOSED WITNESSES AND SUMMARY OF TESTIMONY

Defendant anticipates calling the following witnesses at trial, with key testimony as summarized below:

**Defendant Scott Jones**: Will testify to the facts and circumstances surrounding his termination from CVS. Mr. Jones will testify that he did not quit or voluntarily leave his employment within one year of his hire date. Mr. Jones intends to refute the calculation of

the relocation costs claimed by CVS. Mr. Jones will further testify as to the damages he has suffered as a result of CVS's breach of contract.

**William Holtz:** Will testify to facts and circumstances surrounding the hiring of Defendant Jones by Expedia, Inc., and his communications with Jones regarding his CVS employment. Mr. Holtz's testimony will support Defendant Jones' contention that he did not quit or voluntarily leave his employment within one year of Jones' date of hire.

**Jon Roberts, Lisa Bisaccia and Cheryl Hanes:** CVS personnel that will be subpoenaed to testify regarding the facts and circumstances of Defendant's Jones' termination from CVS, and the actions taken by CVS to calculate and pursue the repayment of relocation costs from Jones.

**K.J. Payette and Randall Stowell**: CVS personnel that will be subpoenaed to testify regarding the recruitment of Jones to employment with CVS, Jones' relocation, the calculation of relocation costs and execution of contractual agreements.

## II. MEMORANDUM OF SUPPORTING LAW

Defendant contends through his counterclaim for breach of contract that he was arbitrarily and unreasonably terminated so that CVS could avoid liability for Defendant's relocation costs. This theory is supported by the date that the written agreement was countersigned by the relocation company. Under Rhode Island law, there is an implied covenant of good faith and fair dealing between parties to a contract so that contractual objective may be achieved. The breach of such covenant gives rise to a breach of contract claim. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 329 (D.R.I. 1999), citing Fleet Nat'l Bank v. Liuzzo, 766 F.Supp. 61, 67 (R.I. 1991); A.A.A. Pool Service v. Aetna Cas. & Sur. Co., 395 A.2d 724 (R.I. 1978). In other words, a breach of

contract exists not only when a party fails to perform, but also where a party interferes with another party's performance. See Kinetic Systems, Inc. v. Rhode Island Industrial Facilities Corp., 2003 WL 22048520 (R.I. Super.) *8, citing Demicco v. Medical Associates of Rhode Island, Inc., 2000 WL 1146532 (D.R.I. 2000).

The termination of an employee without cause in order to avoid paying compensation to which the employee would otherwise be entitled, such as bonuses or pensions, has long been understood to constitute such a breach of good faith and fair dealing. See Michelson v. Digital Financial Services, 167 F.3d 715, 726 (!st. Cir. 1999); Moore v. Home Ins. Co., 601 F.2d 1072, 1074 (9th Cir. 1979); Lemmon v. Cedar Point, Inc., 406 F.2d 94, 97 (6th Cir. 1969); Cataldo v. Zuckerman, 482 N.E.2d 849, 854 (Mass.App.Ct. 1985). This is so even in instances where the employee served at will. See Michaelson at 726. This rule has also been applied even when the employee had not completed all of the actions necessary to earn the compensation or benefit in question, but had substantially done so before such termination. See Lemmon, at 97.

If Defendant's version of events is accepted by the jury, then Plaintiff engaged in a breach of good faith and fair dealing. The agreement regarding relocation expenses required that Plaintiff pay all relocation costs. Defendant would become liable for such costs only in the event of his ". . . voluntary resignation or involuntary termination for cause" from Plaintiff's firm within twelve (12) months after his starting date. In other words, under the agreement, Defendant was required to remain in Plaintiff's employ for a year in order to perfect his right to relocation costs. Defendant adamantly contends that he did not voluntarily resign his employment with Plaintiff, but that he was abruptly terminated without any prior knowledge on May 2, 2006. Defendant further alleges, and CVS personnel

confirms in deposition testimony, that just cause did not exist for Defendant's termination. Rather, Plaintiff terminated Defendant's employment shortly after he attempted to discuss renegotiation of the relocation costs with his immediate supervisor. It is also significant that by May 2, 2006, Defendant had substantially completed all actions necessary to have fully earned his relocation costs, in that he had moved to Rhode Island, and was a mere few weeks away from completing his twelve (12) month anniversary. Plaintiff has continued to insist in pursing this litigation that Defendant repay the relocation costs, despite the fact that their own personnel stated in deposition testimony that they were not aware of any on-the-job misconduct perpetrated by the Defendant.

If the trier of fact believes Defendant's allegations, an inference can be drawn that Plaintiff engaged in this termination in order to avoid responsibility for relocation costs. In other words, Plaintiff prevented Defendant from fully performing the obligations that would have allowed him to be completely entitled to the relocation costs. Plaintiff could therefore be properly found to have breached its covenant of good faith, and accordingly would have committed a breach of contract, resulting in damages to the Defendant. See Cataldo, at 854.

Defendant has filed a counterclaim for attorney's fees pursuant to R.I.G.L. § 9-1-45, which provides in pertinent part:

> The court may award a reasonable attorney's fee to the prevailing party in civil action arising from a breach of contract in which the court:
> (1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
> (2) Renders a default judgment against the losing party.

If Defendant successfully proves that that the Plaintiff terminated him and improperly failed to offer the opportunity to complete the service time necessary to avoid becoming liable for

repayment of relocation costs, then Defendant can prove that there was no justiciable issue of fact or law.

## III. PROBABLE LENGTH OF TRIAL

Defendant anticipates that the trial will last five to seven days.

Respectfully submitted,
Plaintiff,
By her attorneys,

/s/ Noelle K. Clapham
Noelle K. Clapham (5338)
Attorney at Law
24 Salt Pond Road, Suite A-8
South Kingstown, RI 02879
(401) 783-3600
(401) 783-3670 (fax)
October 5, 2007
claphamlaw@verizon.net

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
October 5, 2007
vbejma@smrobinsonlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2007, a true and complete copy of the foregoing was electronically filed with counsel of record for the Defendants: Neal J. McNamara, Esquire, Nixon Peabody LLP, One Citizens Plaza, Suite 500, Providence, RI 02903.

/s/ Vicki J. Bejma