UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CVS PHARMACY, INC., Plaintiff, | : | |
| v. | : | C.A. No. 06-348 ML |
| SCOTT JONES, Defendant. | : | |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff CVS Pharmacy respectfully submits this Pretrial Memorandum pursuant to the Order of this Court.

## 1. PLAINTIFF'S WITNESSES

a. **Jon Roberts –** the Chief Information Officer of CVS, and Scott Jones' direct supervisor from January 2006 until May 2006. Mr. Roberts will testify that during that period the Information Technology ("IT") department of CVS was planning a major reorganization. Scott Jones, among others, played a major role in the planning of the reorganization, and would similarly play a major role in implementation of that reorganization. Roberts will further testify that, on April 21, 2006, Jones came to his office and announced that he had just accepted a job offer at Expedia, located in Seattle, Washington, and that he would have to leave CVS in two weeks, on May 5, 2006, so that he could attend certain meetings in Seattle shortly thereafter. Jones further told Roberts that he was expecting to repay the relocation amount and that he understood it was about $50,000. Roberts asked Jones to think about whether he could stay on for more than two weeks to help with transition in IT. Roberts told Jones that he would check on the amount Jones owed for his relocation expenses. Roberts will testify that Jones came back to

him several days later and said that he could not delay his departure from CVS. In the meantime, Roberts learned that the relocation amount owed by Jones was approximately $160,000. When Roberts informed Jones of this, Jones offered to delay his departure. Roberts decided that he would not allow Jones to delay his departure, and set his last date at CVS as May 2, while paying Jones through his notice date, May 5.

b. **Lisa Bisaccia –** of CVS Human Resources. Ms. Bisaccia will testify regarding her involvement with the reorganization of the IT Department in 2006. She will also testify regarding her discussions with Roberts regarding Jones' resignation. On May 2, 2006, she met with Roberts and Jones, and reviewed with Jones the charges incurred as part of his relocation that were due to be paid under the Relocation Agreement.

c. **Kathy Jo Payette –** of CVS Human Resources. Ms. Payette will testify regarding the interview process when Jones was hired by CVS, and regarding the relocation program. She will also testify regarding a conversation that she had with Jones in June 2006 regarding the repayment of the relocation amount.

d. **Randal Stowell –** of CVS Human Resources. Mr. Stowell will testify regarding the interview process when Jones was hired by CVS. Mr. Stowell is the contact person between CVS and Cendant Mobility (now known as Cartus), which administers the relocation program for CVS. He will testify regarding his interactions with Cendant Mobility with respect to the Jones relocation.

e. **Lester Pierson –** of Cendant Mobility. Mr. Pierson will testify regarding the administration of the CVS relocation program with respect to the Jones relocation, and regarding the charges incurred. In addition, CVS may have an additional Cendant employee testify with

respect to the administration of the relocation program, and the charges incurred, concerning the Jones relocation.

## 2. FACTS TO BE PROVEN AND MEMORANDUM OF SUPPORTING LAW

### A. CVS IS ENTITLED TO RECOVER ON ITS BREACH OF CONTRACT CLAIM AGAINST JONES.

In order for CVS to recover damages in its action for breach of contract against Jones, CVS must prove (1) the existence of the contract; (2) that CVS performed its obligations under the contract; (3) that Jones breached the contract; and (4) that Jones' breach caused CVS's damages. See Petrarca v. Fid. & Cas. Ins. Co., 884 A.2d 406, 410 (R.I. 2005); Baris v. Steinlage, 2003 R.I. Super. LEXIS 154, at *15 (R.I. Super. Ct. Dec. 12, 2003) (citing Del Farno v. Aetna Casualty & Surety Co., 673 A.2d 71, 72 (R.I. 1996)).

#### 1. THERE IS NO DISPUTE AS TO THE EXISTENCE OF THE CONTRACT OR CVS' PERFORMANCE OF ITS OBLIGATIONS THEREUNDER.

##### a. The contract was in writing, signed by Jones, and was supported by consideration in the form of mutual promises by both parties.

CVS will prove that CVS and Jones entered into a written contract ("Relocation Agreement") governing payment for Jones' relocation to Rhode Island. On or about June 30, 2005, Jones signed the Relocation Agreement. The Relocation agreement, which by its terms became "effective as of date signed," provided in pertinent part that

> [CVS] has or will spend a sum of money for the purposes of reassigning the Employee and the Employee's eligible household members to [a] new work location . . . . In consideration of [CVS'] direct payment and/or reimbursement of expenses associated with the Employee's relocation, the Employee agrees that should they terminate employment or be terminated for cause within 12 months of relocation, the Employee agrees to repay all direct payments.

In addition, the Relocation Handbook, which is incorporated into the Relocation Agreement, provides in pertinent part that

> Moving an employee requires a substantial investment by CVS. Therefore, should you elect to voluntarily terminate your employment with CVS or be terminated for cause, during the 12 month period immediately following your effective start date in the new location … you will be required to repay the Company all costs incurred by the Company.

Thus, CVS promised to "front" expenses related to Jones relocation from Pennsylvania to Rhode Island, and in return, Jones promised to repay CVS for such expenses in the event that either (a) Jones voluntarily resigned within one year, or (b) CVS terminated Jones for "cause" within one year. CVS will prove that the mutual obligations of the parties were clear and definite and that both CVS and Jones assented to the terms of the Relocation Agreement, making it a binding and enforceable agreement. See Filippi v. Filippi, 818 A.2d 608, 623-624 (R.I. 2003).

**b. CVS performed its obligations under the contract.**

CVS will prove that it performed its obligations under the Relocation Agreement. In accordance with a separate contract with its relocation agent, Cendant Mobility, CVS did, in fact, expend One Hundred Fifty Nine Thousand and Sixty-Six and 87/100 dollars ($159,066.87) in connection with expenses related to Jones' relocation from Pennsylvania to Rhode Island. These expenses included amounts for the expenses related to the sale of Jones' home, a large loss on the sale of that home, the brokers' commissions incurred with respect to the sale of the home, Jones' expenses related to the search for a new home in Rhode Island, Jones' costs for temporary lodging in Rhode Island after he commenced employment at CVS and prior to moving into his new home, the expenses for moving Jones' household goods, and closing costs for his new home. CVS will prove that it expended these amounts, and did so in direct connection to Jones' relocation, as contemplated by the Relocation Agreement. Thus, there can be no doubt that CVS "complied with [its] portion of the contract" such that it can maintain a breach of contract action against Jones. Baris, 2003 R.I. Super. LEXIS 154, at *15.

**2. JONES BREACHED THE CONTRACT BY FAILING TO REPAY CVS FOR HIS RELOCATION COSTS AFTER JONES RESIGNED HIS POSITION AFTER APPROXIMATELY NINE MONTHS.**

**a. Jones resigned his position with CVS approximately nine months after starting work, thus triggering his obligation to repay CVS for relocation costs under the contract.**

CVS will prove the following facts in support of its claim that Jones breached the Relocation Agreement. Jones began working for CVS on or about July 12, 2005. On or about Friday, April 21, 2006, Jones accepted an offer of employment from Expedia, located in Seattle, Washington. On the same day, Jones gave his supervisor, Jon Roberts, two (2) weeks notice of resignation. Jones acknowledged that he was subject to the obligations set forth in the Relocation Agreement. Roberts asked Jones if Jones would be willing to remain in CVS's employ for a few more months, i.e., through early August 2006. Several days later, Jones spoke to Roberts again, and reiterated that he would resign effective May 5, 2006.

CVS will further prove that soon thereafter, Roberts asked CVS personnel to determine the amount owed by Jones under the Relocation Agreement. He learned shortly thereafter that the amount owed was approximately $160,000.00. On or about April 26, 2006, Roberts informed Jones of the amount owed. On the same day, Jones informed Roberts that he had changed his mind with respect to his resignation, and that he was now willing to stay in CVS's employ in Rhode Island through July 2006. Roberts told Jones that he had already accepted Jones' resignation but that he would consider his request. Roberts then determined that he would not allow Jones to remain past his original notice date. Indeed, Roberts determined that it would be best if Jones departed CVS several days early, on May 2, while being paid through May 5. On May 2, Jones received a letter from CVS Human Resources Director K.J. Payette, stating that she had been informed of his resignation and requesting that he reimburse CVS for relocation

expenses totaling approximately One Hundred Sixty Thousand Dollars ($160,000.00). Jones then departed CVS's employ and began working for Expedia in Seattle. Jones never repaid CVS for the relocation expenses, despite CVS's repeated admonitions that he was required to do so per the terms of the Relocation Agreement.

It is undisputed, and CVS can prove, that Jones' employment with CVS was on at "at will" basis, and that Jones and CVS each retained the right to terminate the employment relationship at any time and for any reason.[1] Thus, CVS' breach of contract claim is premised not solely upon the fact of Jones' resignation within one year of beginning work. Rather, it is premised upon Jones' resignation within one year of beginning work *and* Jones' failure to make repayment per the terms of the Relocation Agreement.

**b. Jones' attempt to delay his resignation does not, as a matter of law, excuse his performance under the contract.**

The mere fact that Jones attempted to delay his resignation after it had been accepted by Roberts, his supervisor, does not excuse Jones from his repayment obligation under the Relocation Agreement. The Rhode Island Supreme Court has unequivocally held, albeit in a different context, that "[a] resignation becomes effective and conclusive for all future purposes upon acceptance by the proper authority." Powers ex rel. Foley v. Caswell, 86 A.2d 379, 383 (R.I. 1952). CVS will prove that Roberts, Jones' supervisor, had authority to, and did, accept Jones' resignation prior to Jones' attempt to delay it. Thus, the resignation became "effective and conclusive" upon Roberts' acceptance, see id., and Jones became obligated to repay CVS.

[1] Jones has not alleged that the Relocation Agreement rendered his employment anything other than at will. In any event, several courts have rejected such an argument in analogous circumstances. See, e.g., Baker v. General Chem. Corp., 153 F.3d 726, 1998 WL 422091, at *3 (10th Cir. 1998) (unpublished); Clark v. Collins Bus Corp., 736 N.E.2d 970, 973 (Ohio Ct. App. 2000); Davis v. Wyoming Med. Ctr., 934 P.2d 1246, 1250-51 (Wyo. 1997); Horizon Corp. v. Weinberg, 531 P.2d 1153, 1155-56 (Ariz. Ct. App. 1975).

By the express terms of the Relocation Agreement, the only circumstances in which Jones would be relieved of any obligation to repay CVS would be (a) if Jones worked for one year or more, or (b) if CVS terminated Jones' employment without cause within one year. It is undisputed that Jones ceased working for CVS within one year of beginning his employment. Thus, in an attempt to avoid his contractual obligations, Jones is forced to argue that CVS' unwillingness to allow him to rescind his resignation somehow converts that resignation into a termination without cause. This argument, however, is utterly foreclosed not only by Caswell, 86 A.2d at 383, but also by voluminous persuasive authority from other jurisdictions in which courts have dealt with the legal effect of attempted withdrawals of resignations.

For example, a majority of courts, in reviewing administrative decisions in the unemployment benefits context, have held that an attempt to rescind a resignation after it has been accepted does not convert such resignation into an involuntary termination. See Wright v. District of Columbia Dept. of Emp. Svcs., 560 A.2d 509, 511 (D.C. Ct. App. 1989). Such cases generally involve a fact pattern similar to the instant case, wherein (1) resignation is tendered; (2) it is accepted by the employer; and then (3) the employee attempts to withdraw the resignation. In these cases, courts have reviewed the administrative body's denial of unemployment benefits on the grounds that the employee left his or her employment voluntarily and without good cause. As the court in Wright noted, "the majority of courts that have considered the matter . . . have denied benefits, reasoning that the employer is not required to accept the withdrawal of resignation." 560 A.2d at 511 (citing Osterhout v. Everett, 6 Ark. App. 216, 639 S.W. 2d 539 (1982); Rabago v. Unemployment Insurance Appeal Board, 84 Cal. App. 3d 200, 207-08, 148 Cal. Rptr. 499, 504 (5th Dist. 1978); Batts v. Review Board of Indiana Employment Security Division, 179 Ind. App. 405, 385 N.E.2d 1174, 1176 (Ind. Ct. App. 1979); Guy Gannett

Publishing Co. v. Maine Employment Security Commission, 317 A.2d 183 (1974); Nicholas v. Board of Review, 171 N.J. Super. 36, 407 A.2d 1254 (1979); Whicker v. High Point Public Schools, 56 N.C. App. 253, 287 S.E.2d 439 (1982)).

Likewise, courts adjudicating employment discrimination claims have repeatedly held that an employer's refusal to accept an employee's attempted withdrawal of his or her resignation does not constitute an adverse employment action or otherwise transform the original resignation into a termination. See, e.g., Rutledge v. Suntrust Bank, 2007 WL 604966, at *7 (M.D. Fla. Feb. 22, 2007) ("The Court also finds that Defendant's refusal to allow Plaintiff to rescind her resignation is not an adverse employment action under the facts of this case.") (also citing Jones v. Butler Metro. Housing Auth., 40 Fed. Appx. 131, 134 (6th Cir. 2002), MacLean v. City of St. Petersburg, 194 F. Supp. 2d 1290, 1300 (M.D. Fla. 2002), and Hammon v. DHL Airways, Inc., 980 F. Supp. 919, 925 (S.D. Ohio 1997) for same proposition). Given the Rhode Island Supreme Court's holding in Caswell and the multitude of decisions rejecting the very argument that Jones is forced to advance here, Jones' resignation must be deemed just that – a resignation – as a matter of law. His subsequent failure to repay CVS per the terms of the Relocation Agreement constitutes a breach of contract entitling CVS to contract damages.

### 3. CVS IS ENTITLED TO RECOVER FROM JONES THE AMOUNT IT EXPENDED FOR JONES' RELOCATION PURSUANT TO THE CONTRACT.

"The underlying rationale in breach-of-contract actions is to place the innocent party in the position in which [it] would have been if the contract had been fully performed." Gray v. Water St. Corp. (In re American Shipyard Corp.), 220 B.R. 734, 737 (Bankr. D.R.I. 1998) (quoting National Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985)). Here, the Relocation

Agreement specifically stated that Jones would "repay all direct payments" in the event of resignation within one year of beginning work.

"The award of contract damages is intended to give the non-breaching party the benefit of its bargain." Id. The benefit of CVS' bargain with Jones was that if Jones resigned or was terminated for cause within one year of beginning employment, Jones would reimburse CVS for moneys expended on his behalf. CVS will prove that it expended $159,066.87 in direct connection with Jones' relocation to Rhode Island. Had Jones adhered to his obligations under the contract, CVS would have been reimbursed for those expenditures. In order to make CVS whole, Jones must be ordered to pay damages in the amount of $159,066.87.

## B. CVS IS ENTITLED TO ATTORNEY'S FEES PURSUANT TO R.I. GEN. LAWS § 9-1-45.

"The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court . . . [f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party." R.I. Gen. Laws § 9-1-45. Jones' undisputed failure to repay CVS for relocation expenses according to the clear terms of the Relocation Agreement presents "no justiciable issue of either law or fact." Id. The terms of the Relocation Agreement are clear, unambiguous, and unequivocal. There is no dispute that Jones tendered his resignation to Roberts. There is no dispute that Roberts accepted that resignation. And there is no dispute that under Rhode Island Supreme Court precedent, "[a] resignation becomes effective and conclusive for all future purposes upon acceptance by the proper authority." Caswell, 86 A.2d at 383.

The mere fact that this Court may have to conduct an analysis of the contract language or the governing law does not, in and of itself, create a justiciable question of law or fact. See Kells

v. Town of Lincoln, 874 A.2d 204, 214 (R.I. 2005). Jones was clearly required to repay CVS those amounts that CVS spent on his relocation. He did not, thus forcing CVS to litigate this case at great time and expense. Pursuant to R.I. Gen. Laws § 9-1-45, CVS is entitled to attorney's fees.

**C. IN THE ALTERNATIVE, CVS IS ENTITLED TO RECOVER AGAINST JONES UNDER A PROMISSORY ESTOPPEL THEORY.**

"In Rhode Island, a promissory estoppel claim requires: '1) A clear and unambiguous promise; 2) reasonable and justifiable reliance upon the promise; and 3) detriment to the promisee, caused by his or her reliance on the promise.'" Norton v. Hoyt, 278 F. Supp. 2d 214, 223 (D.R.I. 2003) (quoting Filippi v. Filippi, 818 A.2d 608, 625-26 (R.I. 2003)). Under the facts described above, CVS can clearly establish such a claim.

First, Jones made a "clear and unambiguous" promise, signed and in writing, that he would repay CVS for expenses associated with his relocation if he voluntarily resigned his position within one year. Second, CVS "reasonabl[y] and justifiabl[y]" relied on Jones' promise, as the promise was in writing and CVS had no reason to believe that Jones would not fulfill his obligation to either stay with the company for one year or repay relocation expenses. Third, CVS's reliance on Jones' promise caused CVS detriment, in that CVS expended $159,066.87 on behalf of Jones, expecting him to stay for at least a year or to reimburse CVS if he voluntarily did not. CVS has been deprived of the $159,066.87 it expended on Jones' relocation. Jones is thus alternatively liable to CVS for such amount based on promissory estoppel.

**D. IN THE ALTERNATIVE, CVS IS ENTITLED TO RECOVER AGAINST JONES UNDER THE EQUITABLE DOCTRINE OF UNJUST ENRICHMENT.**

"In order to recover for unjust enrichment, a plaintiff must prove that (1) a benefit has been conferred, (2) the defendant appreciated the benefit, and (3) the defendant accepted the

benefit in a manner in which it would be inequitable for the defendant to retain the benefit without payment." Lifespan Physicians Prof'l Serv. Org. v. Healthcare Value Mgmt., 2006 U.S. Dist. LEXIS 36635, at *6 (D.R.I. June 6, 2006) (citing Rhode Island Bhd. of Corr. Officers v. Rhode Island, 264 F. Supp. 2d 87, 105 (D.R.I. 2003)). Under the facts described above, CVS can also establish an unjust enrichment claim in this action.

First, CVS clearly conferred a benefit upon Jones, i.e., it paid for his relocation from Pennsylvania to Rhode Island. Second, Jones clearly appreciated the benefit, as he lived in his Rhode Island home for several months while working for CVS at an annual salary of $215,000.00, and was spared a multitude of expenses arising from his relocation. Third, it would be inequitable for Jones to retain the benefit of those spared expenses without compensating CVS for its out-of-pocket costs. Jones retainer of the benefits conferred by CVS would be inequitable because, among other things, (a) Jones promised, in a signed writing, to repay CVS in the event that he resigned within one year; (b) Jones twice affirmed his resignation despite Roberts' requests that Jones remain at CVS until a restructuring of CVS' information services was complete; (c) CVS always acted in good faith throughout Jones' employment and this litigation.

The remedy for unjust enrichment is not contractual but rather is equitable restitution, i.e., "the measure of a defendant's gain rather than a plaintiff's loss." Lifespan Physicians Prof'l Serv. Org., 2006 U.S. Dist. LEXIS 36635, at *6 (citing Caseau v. Belisle, 2005 R.I. Super. LEXIS 144, No. PC 01-4441, 2005 WL 2354135 (R.I. Super. Sept. 26, 2005)). In this case, Jones was spared $159,066.87, i.e., exactly those amounts that CVS spent on his relocation. Jones is thus alternatively liable to CVS for this amount based on the equitable doctrine of unjust enrichment.

**3. PROBABLE LENGTH OF TRIAL** – CVS estimates that the trial will last approximately five days.

CVS PHARMACY, INC.
By Their Attorneys,

/s/ Neal J. McNamara____
Neal J. McNamara (#4249)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
Dated: October 9, 2007

CERTIFICATION

I hereby certify that a true and complete copy of Plaintiff's Pretrial Memorandum was filed electronically and served electronically by operation of the Court's CM/ECF System and was mailed via regular mail, postage prepaid upon the individuals listed below on this 9th day of October, 2007.

Noelle K. Clapham, Esq.
24 Salt Pond Road, Suite A8,
South Kingstown, RI 02879

Vicki J. Bejma, Esq.
Law Offices of Stephen M. Robinson
155 South Main Street
Providence, RI 02903

_/s/ Neal J. McNamara